[Cite as *In re E.F.*, 2017-Ohio-7475.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
|  | JUDGES: |
|  | Hon. W. Scott Gwin, P. J. |
| IN THE MATTER OF: | Hon. John W. Wise, J. |
|  | Hon. Earle E. Wise, J. |
|  |  |
| E.F. | Case No. 2017 CA 00077 |
|  |  |
| MINOR CHILD | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2016 JCV 00279 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 6, 2017 |

APPEARANCES:

For Appellee

BRANDON J. WALTENBAUGH
STARK COUNTY JFS
402 2nd Street SE
Canton, Ohio 44702

For Appellant

BERNARD HUNT
2395 McGinty Road NW
North Canton, OHio 44720

*Wise, John, J.*

**{¶1}** Appellant-Father S.F. appeals the judgment of the Stark County Common Pleas Court, Juvenile Division, awarding permanent custody of his minor child E.F. to appellee Stark County Department of Job and Family Services.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶2}** On April 1, 2016, SCJFS filed a complaint alleging the dependency and/or neglect of E.F. (DOB 3/29/2016). Appellant is the biological father of E.F. The allegations of the complaint centered on the agency's concerns that the child's parents were unable to provide the child's needs directly at the hospital, along with the parents' history with Summit County Children Services including involuntarily losing permanent custody of a previous child, lack of follow through with case plan services in the past, and continuing deplorable home conditions.

**{¶3}** On April 4, 2016, the trial court found that probable cause existed for the involvement of SCJFS and placed the child into its emergency temporary custody.

**{¶4}** On June 15, 2016, SCJFS deleted the allegation of neglect, and the trial court found E.F. to be a dependent child and placed her into the temporary custody of SCJFS. The trial court approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home.

**{¶5}** The case plan proposed by SCJFS and adopted by the trial court asked Appellant-father to complete a Parenting Evaluation at Northeast Ohio Behavioral Health, attend Anger Management Services through Melambrosia, undergo a complete mental health evaluation, complete Goodwill parenting classes after the mental health evaluation,

and obtain employment and secure stable housing. (T. 1 at 6-7). Concerns were also raised regarding Appellant's ability to intervene and protect the child from her mother due to the mother's limitations and mental health issues.

{¶6}  On October 14, 2016, the trial court reviewed the case.  The trial court found that Appellant-father was diagnosed with several mental health issues, had not followed through with mental health counseling or medication, and needed help with basic parenting skills. The trial court approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home. The trial court also found that no compelling reasons existed to preclude a request for permanent custody.

{¶7}  On January 20, 2017, SCJFS filed a motion seeking permanent custody of the child. In its motion, SCJFS alleged, among other things, that the child could not and should not be placed with Appellant within a reasonable amount of time, Appellant had his parental rights terminated pursuant to R.C. §2151.353, R.C. §2151.414, or R.C. §2151.415 with respect to a sibling, and permanent custody was in the child's best interest.

{¶8}  On January 24, 2017, SCJFS filed an amended motion seeking permanent custody of the child. The amended motion was substantively equivalent to the original motion.

{¶9}  On February 17, 2017, the Guardian ad Litem for E.F., Ms. Valerie Anderson, submitted a report recommending that E.F. be placed into the permanent custody of SCJFS. Specifically, Ms. Anderson noted that it was "absolutely imperative that SCJFS (be) granted permanent custody", and that Appellant "simply do(es) not have

the parental skills necessary to keep (E.F.) well cared for and safe", and Appellant "has a problem maintaining employment."

{¶10} On February 21, 2017, the trial court again reviewed the case. The trial court found that Appellant was not employed and had failed to engage in parenting classes, anger management classes, or other services as required by his case plan. The trial court approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home. The trial court again found that no compelling reasons existed to preclude a request for permanent custody.

{¶11} On March 22, 2017, the trial court heard evidence on the motion seeking permanent custody of E.F. (T. 1 at 4-105). At the hearing, SCJFS presented evidence regarding Appellant-father and the minor child. (T. 1 at 5-64). Caseworker Vicki Mitchell testified that Appellant had not fully completed his case plan, nor had he significantly reduced the risk he posed to E.F. (T. 1 at 5-22). Specifically, Caseworker Mitchell testified that Appellant did not address his mental health issues, refused to comply with medication, did not complete anger management classes, did not complete parenting classes, was not employed, did not have appropriate housing, and struggled with basic parenting skills such as changing a diaper. (T. 1 at 7-19). Ms. Mitchell also testified that Appellant had previously lost permanent custody of a child. (T. 1 at 6). Ms. Jennifer Fire from Goodwill Parenting testified that appellant never began parenting classes with her agency because he refused to sign a basic behavioral contract. (T. 1 at 37-41). Ms. Fire stated that Appellant presented as unnecessarily argumentative to the point where police had to be involved on multiple occasions. (T. 1 at 37-41).

**{¶12}** Dr. Aimee Thomas from Northeast Ohio Behavioral Health testified that she diagnosed Appellant-father with a Bipolar Disorder, Narcissistic Personality Disorder, and Obsessive Compulsive traits. (Tr. 1 at 58-63). Dr. Thomas opined that it would be critical for Appellant-father to participate in mental health treatment, psychiatric services, take all prescribed medication, anger management classes, parenting classes, and maintain gainful employment and appropriate housing. (T. 1 at 61-63).

**{¶13}** Appellant-father also presented testimony. (T. 1 at 58-63). The hearing was continued to a later date to allow for the presentation of additional testimony and evidence. (T. 1 at 107).

**{¶14}** On April 11, 2017, the trial court again heard evidence on the motion seeking permanent custody of E.F. (T. 2 at 4-23). At the hearing, SCJFS again presented evidence regarding Appellant and E.F. (T. 2 at 4-11). Caseworker Mitchell testified that E.F. had been placed with a biological sibling who had been adopted by the foster family, E.F. was bonded to the foster family and to the sibling, and that the foster family was interested in adopting E.F. (T. 2 at 2-10). The Guardian ad Litem for the child made a statement recommending that permanent custody be granted to SCJFS. (T. 2 at 22). The foster parents of the child also made statements. (T. 2 at 22-23). Appellant also offered testimony. (T. 2 at 18-19). At the conclusion of the hearing, the trial court took the matter under advisement. (T. 2 at 23).

**{¶15}** On April 12, 2017, the trial court issued its findings of fact granting permanent custody of E.F. to SCJFS and terminating Appellant-father's parental rights. Specifically, the trial court found that, despite reasonable efforts by SCJFS, E.F. could

not and should not be placed with Appellant within a reasonable amount of time, and the grant of permanent custody was in her best interest.

{¶16} Appellant-father now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

{¶17} "I. THE TRIAL COURT'S JUDGMENT THAT THE MINOR CHILD E.F. CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶18} "II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICENCY [sic] OF THE EVIDENCE."

I.

{¶19} Appellant-father argues that the court's finding that E.F. could not be placed with him within a reasonable period of time was against the manifest weight and sufficiency of the evidence.

{¶20} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases."

*Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).

**{¶21}** In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); *See also*, *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74, 564 N.E.2d 54.

**{¶22}** "An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

**{¶23}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St .3d 415, 419, 674 N.E.2d 1159 (1997); *see, also*, *In re: Christian,* 4th Dist. Athens App. No.

04CA10, 2004–Ohio–3146; *In re: C. W.,* 2nd Dist. Montgomery App. No. 20140, 2004– Ohio–2040.

**{¶24}** Pursuant to R.C. §2151.414(B), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, ... and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents.* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶25}** Revised Code §2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a

reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

***

(16) Any other factors the court considers relevant.

**{¶26}** In the case *sub judice*, we find that the trial court's finding that E.F. could not be placed with Appellant-father within a reasonable period of time was not against the manifest weight or sufficiency of the evidence. In concluding that the child cannot or should not be placed with Appellant within a reasonable period of time, there was enough evidence for the trial court to rely upon R.C. §2151.414(E)(1).

**{¶27}** The trial court heard testimony from caseworker Mitchell, who testified that Appellant-father's did not complete anger management classes, never began the parenting classes at Goodwill, nor did he attend any joint counseling as recommended by Northeast Ohio Behavioral Health. (T. 1 at 10-11). Dr. Aimee Thomas from Northeast Ohio Behavioral Health testified that she diagnosed Appellant with Bipolar Disorder, Narcissistic Personality Disorder, and Obsessive Compulsive traits, (T. 1 at 62-63). Dr. Thomas stated that it was her recommendation that Appellant engage in mental health treatment, anger management services, parenting classes, and maintain steady employment and appropriate housing. (T. 1 at 62-63). Appellant's case plan was amended to reflect those recommendations. (T. 1 at 7). Appellant failed to complete his mental health case, attending only three appointments, and was non-compliant with his medication. (T. 1 at 9). Appellant did not participate in parenting classes and was defiant and combative with the program administrator. (T. 1 at 10). Appellant did not engage in anger management classes as recommended. (T. 1 at 9). Appellant failed to secure appropriate housing or steady employment. (T. 1 at 11). Appellant was further unable to demonstrate basic parenting knowledge and had to be intensely monitored during

visits with the child due to Appellant almost dropping the baby on multiple occasions. (T. 1 at 15-16). Caseworker Mitchell testified that she had never had a case during her seventeen (17) year career at SCJFS that had to be monitored so intensely during visitations. (T. 1 at 16). Appellant failed to complete almost every aspect of his case plan.

**{¶28}** The trial court also heard testimony concerning Appellant-father's history of moving frequently and engaging in physical altercations with relatives which resulted in a "No Contact" Order. (T. 1 at 12). Additionally, the agency put on testimony that Appellant required full-time assistance from the staff at Goodwill when he visited E.F. in order to ensure the child's safety. (T. 1 at 14).

**{¶29}** In accordance with the evidence presented, the trial court found that Appellant-father lost permanent custody of another child after a trial was held in Summit County. Caseworker Mitchell testified to the same. (T. 1 at 7). The concerns in that case were similar to the concerns in this case. (T. 1 at 6). On cross-examination, Appellant admitted that he lost permanent custody of a child in Summit County. In concluding that the child cannot or should not be placed with Appellant within a reasonable period of time, there was enough evidence for the trial court to rely upon pursuant to R.C. §2151.414(E)(11).

**{¶30}** For the aforementioned reasons, there was more than enough evidence for the trial court to conclude that E.F. could not and should not be replaced with Appellant within a reasonable amount of time.

**{¶31}** Appellant-father also argues SCJFS did not make reasonable efforts to prevent the need for placement or make it possible for the child to return home.

{¶32} In *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, the Ohio Supreme Court explained that even though R.C. 2151.419, "by its terms," does not apply to motions for permanent custody, the agency "must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights." *Id.* at ¶ 43; *see also In re J.H.*, 2017–Ohio–1564, at ¶ 21. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *In re C.F.* at ¶ 43. Further, where, as here, the juvenile court relies on R.C. 2151.414(E)(1) to support an award of permanent custody to the agency, the court must examine the "reasonable case planning and diligent efforts by the agency to assist the parents" when considering whether the child cannot be placed with the parents within a reasonable time or should not be placed with the parents. *See id.*; R.C. 2151.414(E)(1).

{¶33} Upon review, we find that the record reflects that the trial court made a finding of reasonable efforts on multiple occasions, prior to the permanent custody hearing: April 4, 2016, June 15, 2016, October 14, 2016, and February 21, 2017.

{¶34} Further, the testimony presented at the permanent custody hearing, as set forth above, demonstrated that the Agency made reasonable efforts to assist Appellant in completing his case plan. The Agency made referrals for him to participate in parenting evaluation, parenting classes, anger management classes and individual counseling. (T. 1 at 20-21). In response to Appellant's allegations that he was not provided assistance with transportation, Caseworker Mitchell testified that the agency offered bus passes to Appellant. (T. 1 at 20).

{¶35} In this case, the record supports the juvenile court's determination that SCJFS made reasonable efforts to reunify the family and engaged in "reasonable case planning" and "diligent efforts" to assist the parents in remedying the problems that caused E.F. to be taken from them.

{¶36} Based on the overwhelming evidence presented at trial, Appellant's First Assignment of Error is overruled.

II.

{¶37} In his Second Assignment of Error, Appellant-father argues that the finding that permanent custody was in the best interest of E.F. was against the manifest weight and sufficiency of the evidence.

{¶38} In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶39} During the best interest portion of the trial, Caseworker Mitchell testified that E.F. is now a healthy, developmentally on track child, despite the fact that she was born premature. (T. 2 at 6). E.F. has been placed with her biological sibling who has already been adopted by the foster family. (T. 2 at 6-7). The foster family wants to also adopt E.F.

(T. 2 at 6-7). E.F. is bonded to her foster family and her biological sibling. (T. 2 at 6-7). Multiple family members were contacted in regards to placement, all of which were determined inappropriate or did not follow through with requests. (T. 2 at 7-9). Caseworker Mitchell provided her opinion that permanent custody was in E.F.'s best interest because she would benefit from adoption, she is not bonded to Appellant-father, and the benefit of permanency far outweighs the risk of harm due to severing Appellant's parental rights. (T. 2 at 9-10).

{¶40} Ms. Valerie Anderson, the Guardian ad Litem for the child, also agreed that permanent custody was in E.F.'s best interest. (T. 2 at 22). In her report submitted prior to the hearing, Ms. Anderson noted that it was "absolutely imperative that SCJFS (be) granted permanent custody" and that Appellant-father "simply do(es) not have the parental skills necessary to keep (E.F.) well cared for and safe."

{¶41} Based on the foregoing, we find that the trial court's finding that permanent custody was in the best interest of E.F. was supported by the evidence.

**{¶42}**  Appellant-father's Second Assignment of Error is overruled.

**{¶43}**  The judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed.  Costs are assessed to appellant.


By: Wise, John, J.

Gwin, P. J., and

Wise, Earle E., J., concur.



JWW/d 0825